SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
J. BRETT GROSKO, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0342
Facsimile: (202) 305-0275
Email: brett.grosko@usdoj.gov

*Counsel for Federal Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CASCADIA WILDLANDS; OREGON WILD; CENTER FOR BIOLOGICAL DIVERSITY, <br><br> *Plaintiffs,* <br><br> v. <br><br> JIM THRAILKILL, Field Supervisor, Roseburg Field Office, in his official capacity; UNITED STATES FISH & WILDLIFE SERVICE, an agency with in the U.S. Department of the Interior, <br><br> *Federal Defendants,* <br><br> ROUGH & READY LUMBER, LLC, SWANSON GROUP MFG. LLC, and BOISE CASCADE WOOD PRODUCTS, L.L.C., <br><br> *Defendant-Intervenors.* | CASE NO. 6:14-CV-01236-TC <br><br> **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL** |

## TABLE OF CONTENTS

                                                                            **Page**

**INTRODUCTION** ………………………………………………………………………2

**STANDARD FOR AN INJUNCTION PENDING AN APPEAL** …………………………3

**ARGUMENT** ……………………………………………………………………………..5

**I.    PLAINTIFFS FAIL TO ESTABLISH ANY CLEAR ERROR BY THE
        COURT, SERIOUS QUESTIONS, OR LIKELIHOOD OF SUCCESS
        ON THE  MERITS OF THEIR APPEAL** ...………………………………...… 5

**II.   THERE IS NO LIKELIHOOD OF IRREPARABLE HARM IN THE ABSENCE
        OF A PRELIMINARY INJUNCTION PENDING APPEAL** ………………………. 8

**III.  THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST DO
        NOT FAVOR A PRELIMINARY INJUNCTION** …………………………….… 14

**CONCLUSION** …………………………………………………………………….. 15

The Federal Defendants, Jim Thrailkill, in his official capacity as Field Supervisor of the U.S. Fish and Wildlife Service, the U.S. Fish and Wildlife Service (collectively, "Federal Defendants"), hereby file their opposition to Plaintiffs' Motion for an Injunction Pending Appeal, Dkt. No. 25 ("Motion").

## INTRODUCTION

Plaintiffs Cascadia Wildlands, Oregon Wild, and the Center for Biological Diversity ("Plaintiffs") challenged the United States Fish and Wildlife Service's ("FWS") June 2014 biological opinion ("BiOp") analyzing the U.S. Bureau of Land Management's ("BLM") Medford Douglas Post-Fire Project ("Project") based on alleged violations of the Endangered Species Act ("ESA"). On September 23, 2014, this Court denied Plaintiffs' motion for a preliminary injunction. *See* Order (Dkt. No. 23) ("Order"). In its detailed Order, this Court found that Plaintiffs had failed to meet their burden as to three of the four preliminary injunction standards. First, the Court held that a "likelihood of success . . . is simply not present in this action, nor are there 'serious questions' going to the merits." *Cascadia Wildlands v. Thrailkill*, -- F. Supp. 3d --, 2014 WL 4724855, at *4 (D. Or., Sept. 23, 2014). The Court also concluded that Plaintiffs had failed to demonstrate that the incidental take of owls at up to seven sites would cause any "likelihood of irreparable harm to the species." *Id.* Third, the Court found that the public interest favored the Federal Defendants due to the Project's economic and environmental benefits. The Court found that these benefits include "providing jobs and retaining infrastructure for them, fuel reduction benefits to decrease the intensity and severity of future fires, and avoiding insect buildup that can threaten adjoining trees." *Id.*

Plaintiffs filed a notice of appeal from this Court's denial of their preliminary injunction motion on September 30, 2014. Dkt. No. 24. Plaintiffs now file a motion for an injunction

pending appeal, requesting that this Court halt work on the Project until the appeal is resolved. Plaintiffs fail, however, to demonstrate that they are entitled to this extraordinary remedy. First, Plaintiffs have not shown that they are likely to succeed on the merits of their appeal, or even raised serious questions. Indeed, Plaintiffs' motion is based on a subset of the same arguments this Court has already evaluated and rejected. Plaintiffs' repackaging of these arguments does not enhance their merit or warrant a stay under the applicable standards.

Nor have Plaintiffs demonstrated that they meet any of the equitable elements to support an injunction. Plaintiffs have not demonstrated that absent an injunction they would suffer irreparable harm, and indeed, an injunction pending appeal would result in potentially serious consequences and burdens for the Federal Defendants, and run counter to the public interest. The Project is designed to reduce the risk of large-scale habitat loss from, and increase forest stand resiliency to, natural disturbances, such as insects, disease, and wildfire. An injunction would prevent this important Project from moving forward. Plaintiffs' motion should therefore be denied.

## STANDARD FOR AN INJUNCTION PENDING AN APPEAL

"A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted). A party seeking an injunction to halt governmental action that the district court has declined to enjoin must demonstrate that: (1) "[they are] likely to succeed on the merits" of their appeal; (2) an "irreparable injury absent a stay;" (3) the issuance of a stay would not substantially injure the other interested parties; and (4) the stay is in the public interest. *Sandoval-Vela v. Napolitano*, No. 10-cv-59-IEG (RBB), 2010 WL 431449, at *4 (S.D. Cal., Jan. 29, 2010) (quoting *California Pharmacists Ass'n v. Maxwell-*

*Jolly*, 563 F.3d 847, 849-50 (9th Cir. 2009)).  These requirements are the same as for a preliminary injunction under *Winter v. Natural Resources Defense Council,* 555 U.S. 7, 20-21 (2008); *see also Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (applying *Winter* in ESA context).

As to the first prong, the Ninth Circuit has stated that its alternative "sliding scale" approach remains viable after *Winter*, such that "'serious questions going to the merits' and a balance of hardships that tips *sharply* towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff *also shows* that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (emphasis added). Under this approach, "serious questions going to the merits" requires *more* than a showing that "success is more likely than not[;]" it requires a plaintiff to demonstrate a "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011).

The Ninth Circuit panel in *Alliance for the Wild Rockies* has further clarified that "[u]nder *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible," and that without such a showing of likely irreparable harm in the first instance, no sliding-scale on the remaining factors is permitted.  632 F.3d at 1131.  In other words, any remaining viability of the sliding-scale approach now flows one way; upon a showing of likely irreparable harm, a lesser showing of success on the merits might be appropriate, but not *vice versa*.

//
//
//

**ARGUMENT**

I. **PLAINTIFFS FAIL TO ESTABLISH ANY CLEAR ERROR BY THE COURT, SERIOUS QUESTIONS, OR LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR APPEAL.**

Plaintiffs fail to meet their burden to demonstrate that they are likely to succeed on the merits. For this Court to issue an injunction pending appeal, Plaintiffs must show that the Court committed clear legal error in denying their motion for a preliminary injunction.[1] *CytoSport, Inc. v. Vital Pharms.*, 617 F. Supp. 2d 1051, 1085 (E.D. Cal. 2009); *Sandoval-Vela*, 2010 WL 431449, at *4 (citing *California Pharmacists*, 563 F.3d at 849-50). Here, Plaintiffs neither establish that they are likely to succeed on the merits of their appeal, nor demonstrate that any serious questions are raised. Plaintiffs' filing is merely a *pro forma* recitation of three of their previous arguments without discussion of any alleged errors in the Court's opinion. *Compare* Dkt. No. 13 at 13-16 (effect of barred owl presence on spotted owl detectability), 16-18 (size and location of core areas and home ranges), and 25-31 (alleged failure to act consistently with revised spotted owl recovery plan), *with* Dkt. No. 25 at 3-5 (effect of barred owl presence on spotted owl detectability), 5-8 (size and location of core areas and home ranges), and 8-12 (alleged failure to act consistently with revised spotted owl recovery plan). On this basis alone, the Court should deny Plaintiffs' motion.

---

[1] Plaintiffs bear the burden of demonstrating that the U.S. Court of Appeals for the Ninth Circuit will overturn this Court's order denying their motion for a preliminary injunction. *California Pharmacists*, 563 F.3d at 849-50. In this context, the Ninth Circuit will review the Court's denial of Plaintiffs' request for a preliminary injunction under the abuse of discretion standard. *Ashcroft v. ACLU*, 542 U.S.C 656, 664 (2004). This Court's factual determinations, including its findings as to the likelihood of success on the merits, will be reviewed for clear error, and will not be overturned "as long as [the] findings are plausible in light of the record viewed in its entirety." *National Wildlife Fed'n v. National Marine Fisheries Serv.*, 422 F.3d 782, 795 (9th Cir. 2005) (citation omitted).

5

Additionally, the arguments that Plaintiffs do make lack merit. First, Plaintiffs rehash their contention that FWS failed to consider the possibility that barred owls are making spotted owls more difficult to detect. Dkt. No. 25 at 3-4. Plaintiffs incorrectly argue that FWS merely "catalogue[d] the relevant science." *Id.* To the contrary, FWS clearly highlighted the issue and then used the best available scientific information–long term and consistent BLM surveys for the Klamath Demographic Study Area ("Study Area")–in its analysis. Dkt. 21 (Defendants' Response to Plaintiffs' Motion for Preliminary Injunction) at 13-14 (citing BiOp at 18, 20, 23, 92, and 93; Biological Assessment ("BA"), App. "D"). The Study Area has been subject to a constant survey effort. BiOp at 21; *see also* 12/5/13 Post Fire Treatment/Sideboards Meeting Memorandum at 4 ("There is a lot of great survey data in this fire area since most of it is within the [Study Area]"). In its expert judgment, FWS deemed that information to be reliable. *Id.* While Plaintiffs would have preferred that FWS arrive at a different conclusion, Plaintiffs do not identify any other surveys or occupancy data that FWS could or should have used. Dkt. No. 25. As such, FWS used the best available scientific information to identify the location of spotted owls in the action area. *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010) (courts need only ensure that FWS did not fail to consider an important aspect of the problem); *cf.* 16 U.S.C. § 1536(a)(2) ("In fulfilling [its obligation to consult,] each agency shall use the best scientific and commercial data available.").

Plaintiffs' restatement of their argument concerning the potential for owl nest sites to shift post-fire similarly fails. As Federal Defendants have demonstrated, FWS fully considered the possibility that spotted owls may have shifted their core-use areas and home ranges post-fire. BiOp at 32, 33-34, 40 (shifts possible in eight of fourteen sites); 131 (studies concerning effect of fire inconclusive), 133. FWS cautioned that "[r]esponses such as shifts in home ranges . . . in

6

some cases can be difficult to predict" but nevertheless identified eight sites that may have shifted. BiOp at 40, 131. In short, contrary to Plaintiffs' allegations, FWS used the robust data available from the Study Area to identify, to the extent practicable, those sites that may have shifted post-fire. FWS incorporated this data into its analysis.

Third, the Court should again reject Plaintiffs' invitation to treat the 2011 Revised Northern Spotted Owl Recovery Plan ("2011 Revised Recovery Plan") as binding. Dkt. No. 25 at 8-12; *Cascadia Wildlands v. Thrailkill*, -- F. Supp. 3d --, 2014 WL 4724855, *12 (D. Or., Sept. 23, 2014). Plaintiffs clearly seek to enforce the 2011 Revised Recovery Plan. Dkt. No. 25 at 12 (Plaintiffs contending that "FWS has failed to implement and utilize" the 2011 Revised Recovery Plan and the Project "is precisely the type of project where Congress expected FWS to proactively utilize and implement Recovery plan recovery actions"). As Federal Defendants have shown, recovery plans are not binding. Dkt. No. 21 at 27-28; *see also Cascadia Wildlands v. United States Bureau of Indian Affairs*, 2014 U.S. Dist. LEXIS 86541, *12-*13 (D. Or. Mar. 19, 2014) (Coffin, J.) (noting that the 2011 Revised Recovery Plan is discretionary for federal agencies).

In any event, FWS's BiOp used the science and relevant recovery actions from the 2011 Revised Recovery Plan to evaluate effects to recovery. Dkt. No. 21 at 28-31. While Plaintiffs insist that FWS must implement the recovery plan in a biological opinion, the purpose of a biological opinion is to determine whether an action jeopardizes a listed species or destroys or adversely modifies its critical habitat. *Cascadia Wildlands v. Thrailkill*, -- F. Supp. 3d --, 2014 WL 4724855, *13 (D. Or., Sept. 23, 2014). As part of its jeopardy analysis, FWS considers effects of proposed actions on the recovery of the species. FWS did so here, and Plaintiffs do not suggest otherwise. Dkt. No. 25. With regard to Recovery Action 10, FWS–based on its expert

7

judgment–worked with BLM to rank the potentially affected known spotted owl sites in the action based on duration of occupancy, successful reproduction, and post-fire habitat conditions. Using this information, BLM attempted to avoid and minimize Project impacts to priority sites, and focus salvage harvest in areas with demonstrated non-occupancy for several years prior to the fire. The Court found that FWS clearly considered Recovery Action 10. *Cascadia Wildlands v. Thrailkill*, -- F. Supp. 3d --, 2014 WL 4724855, *13-*14 (D. Or., Sept. 23, 2014); *see also* Dkt. No. 21 at 28-29.

Similarly, FWS fully considered the impacts of the proposed action on Recovery Action 12. BLM, working with FWS, took special snag-related precautions in those areas subject to harvest. Plaintiffs tacitly concede that BLM left in place up to five times more than the amount of snags required by the applicable resource management plan. Dkt. No. 21 at 30-31; BiOp at 47 ("Project will provide for a higher retention of snags (up to 5 times more) and coarse woody debris within spotted owl critical habitat and 0.5 mile core-use areas of high priority sites as compared to [BLM's] 1995 RMP standards for Matrix lands which is the underlying [land use allocation] of the action area."). Accordingly, the Court appropriately concluded that FWS's actions considered Recovery Actions 10 and 12. *Cascadia Wildlands v. Thrailkill*, -- F. Supp. 3d --, 2014 WL 4724855, at *12-*14 (D. Or., Sept. 23, 2014).

Accordingly, the Court should find that Plaintiffs have failed to show that they are likely to succeed on the merits.

## II.  THERE IS NO LIKELIHOOD OF IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION PENDING APPEAL.

The Supreme Court has held that the plaintiff carries the burden of demonstrating a likelihood of irreparable harm through a "clear showing" of "substantial proof." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted, citation omitted). *Winter* makes clear

that a plaintiff must establish that irreparable harm is *likely*, not just possible. 555 U.S. at 22 (citations omitted); *see also Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1131). Here, Plaintiffs advance three theories of irreparable harm, alleging that (1) the Project is harming spotted owls; (2) the Project is harming Plaintiffs' members' use of "mature and old-growth forest habitat"; and (3) FWS "fail[ed] to follow the procedural requirements" of the ESA. Dkt. No. 25 at 14, 16. Under any of these theories, Plaintiffs have not shown that the Project poses a risk of irreparable harm.

**A.    Plaintiffs Have Failed to Demonstrate that the Incidental Take of Spotted Owls at Up to Seven Sites Will Significantly Affect the Species as a Whole.**

In order to show a likelihood of irreparable harm, Plaintiffs would have to show that the potential effects of the Project will significantly affect the species as a whole. Dkt. No. 23 at 10 (this Court concluding that Plaintiffs had failed to demonstrate that the project level of the incidental take in the Project Area would cause any "likelihood of irreparable harm to the species."). The Act contemplates "take" (*i.e.*, injury or killing) of individual members of a species, 16 U.S.C. § 1536(o), demonstrating that not every harm to an individual member of a species is irreparable. *Id.* Rather, courts have long held that harm is irreparable only if it is "significant" to the "overall population" of the species in question. *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1240 (9th Cir. 2005) (rejecting claim that "some negative effects [on wildlife species or habitat] necessarily rises to the level of demonstrating a significant effect on the environment"); *Fund for Animals v. Frizzell*, 530 F.2d 982, 986–87 (D.C. Cir. 1975) (the "loss of only one [animal] is [not a] sufficient injury to warrant a preliminary injunction;" a plaintiff "must demonstrate 'a substantial likelihood of irreparable harm'" to his interests resulting from some form of 'irreparabl[e] damage [to] the species."); *Defenders of Wildlife v. Salazar*, 812 F. Supp. 2d 1205, 1210 (D. Mont. 2009) (denying injunctive relief

9

involving hunt of as many as 330 wolves where plaintiffs offered no proof that harm would be significant for the species as a whole).  Accordingly, Plaintiffs must present a "concrete showing of probable deaths during the interim period and of how these deaths may impact the species." *Water Keeper Alliance v. DOD*, 271 F.3d 21, 34 (1st Cir. 2001).

Plaintiffs' arguments to the contrary are unavailing.  First, Plaintiffs selectively cite *National Wildlife Federation v. Burlington Northern Railroad*, 23 F.3d 1508 (9th Cir. 1994) ("*NWF*"), omitting the second sentence of the footnote that they reference.  Dkt. No. 25 at 13-14 (Plaintiffs citing *NWF*).  There, the Ninth Circuit observed that while a plaintiff need not show that a project will result in the *extinction* of a species to obtain an injunction, 23 F. 3d at 1512, n.8, a plaintiff must at a minimum show "*a definitive threat of future harm to protected species*, not mere speculation."  *Id.* (emphasis added).

Second, Plaintiffs cite to *Defenders of Wildlife v. Secretary, U.S. Department of the Interior*, 354 F. Supp. 2d 1156 (D. Or. 2005) ("*Defenders*").  Dkt. No. 25 at 14.  *Defenders*, however, is distinguishable because it concerned FWS's rule reclassifying and removing the gray wolf from the list of endangered and threatened species in certain portions of its range ("Wolf Delisting Rule"), not an individual land management project.  354 F. Supp. 2d at 1158-59.  The court justified an injunction based on its finding that the Wolf Delisting Rule was arbitrary and capricious and had resulted in the delisting of "vast areas" of the species' habitat.  *Id.* at 1172 (injunction warranted in part because "FWS downlisted major geographic areas without assessing the threats to the wolf by applying the statutorily mandated listing factors").  Plaintiffs do not allege that the roughly 1600 acres at issue here constitute "vast areas" of spotted owl habitat.  Dkt. No. 25.  *Defenders* is therefore of no moment.

Third, Plaintiffs cite to *Defenders of Wildlife v. Martin*, 454 F. Supp. 2d 1085 (E.D. Wash. 2006) ("*Martin*"). *Martin* involved the effects of snowmobiling on the listed woodland caribou. *Id.* The court based its injunction on an inference that the U.S. Forest Service had failed to implement a recreation management strategy for the area at issue. *Id.* at 1099; Dkt. No. 25 at 14. FWS had included the implementation of that that strategy as one of the required reasonable and prudent measures in its biological opinion. *Id.* The court inferred that the U.S. Forest Service's failure to comply with this condition alone "jeopardize[d] the continued existence of the woodland carbou." *Id.* Here, Plaintiffs have not alleged that BLM has failed to comply with any aspect of the BiOp. Dkt. Nos. 11 (First Amended Complaint), 25. *Martin* is therefore inapposite.

Nor do the other cases that Plaintiffs cite support their contentions. Contrary to Plaintiffs' arguments, *Pacific Coast Federation of Fishermen's Ass'ns v. Gutierrez*, 606 F. Supp. 2d 1195 (E.D. Cal. 2008), found that harm to the species must be "significant" to qualify as "irreparable harm." *Id.* at 1210 ("The approach taken in *NWF v. NMFS I*, [422 F.3d 782] and *American Rivers [v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230 (D.D.C. 2003)] that identifies 'irreparable harm' as 'significant' vis-a-vis the overall population, applies here."). Similarly, the unreported decision in *Western Watersheds Project v. Salazar*, NO. CV 11-492 DMG (Ex), 2011 U.S. Dist. LEXIS 151556, at *3 (C.D. Cal. Aug. 10, 2011) ("*WWP v. Salazar*"), concerned a motion for a preliminary injunction based solely on claims under the National Environmental Policy Act claims, not the ESA. 2011 U.S. Dist. LEXIS 151556, at *3. It therefore sheds no light on the quantum of harm necessary to qualify as "irreparable harm" under the ESA. *Id.* Moreover, the statement that Plaintiffs quote concerned effects to Plaintiffs' ability to recreate and enjoy certain areas, not effects to a listed species. *Id.* at *58. *WWP v.*

11

*Salazar* is therefore distinguishable from the case at bar. *Cf. Western Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (affirming *WWP v. Salazar*'s denial of motion for a preliminary injunction, noting that "a district court decision denying a preliminary injunction to 'limited and deferential' review; we will reverse only where the district court abused its discretion") (citation omitted).[2]

Here, Plaintiffs have not even attempted to show how any incidental take that may occur would significantly affect the spotted owl as a species. Dkt. No. 25. Plaintiffs therefore have not met their burden under the irreparable harm prong and the motion may be denied on this basis alone.

**B.    Plaintiffs' Argument that the Loss of Forest Habitat Will Impact Their Enjoyment of Habitat Within the Project Area Fails.**

Plaintiffs' second contention–that that the "loss of mature and old-growth forest habitat" will impact *Plaintiffs'* enjoyment of that habitat, and that these impacts necessarily constitute irreparable harm–is based on a flawed legal premise. Dkt. No. 25 at 14-15. The Ninth Circuit requires a showing of harm to the species in ESA cases. As the U.S. District Court for the District of Montana recently stated:

> While injury to the plaintiff is a critical element of standing, *Friends of the Earth v. Laidlaw Envtl.Services*, 528 U.S. 167, 181 (2000), . . . it is not sufficient to satisfy the element of irreparable harm in the context of ESA-based injunctions. *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 n.6 (9th Cir. 2011) ("Of course ... a plaintiff may establish standing to seek injunctive relief yet fail to show the likelihood of irreparable harm necessary to obtain it"). Any alleged harm to the plaintiff must be anchored in a specific and *detailed allegation* of harm to a particular species or critical habitat. *See Sierra Forest Legacy v. Sherman*, 951 F.

---

[2]    Plaintiffs' citation to *Center for Biological Diversity v. Fish & Wildlife Service*, No. C-08-1278 EMC, 2011 WL 6813200 (N.D. Cal. Dec. 28, 2011) ("*CBD*"), is also misguided. Dkt. No. 25 at 13. There, the court issued an injunction only after identifying significant effects. 2011 WL 6813200, at *5 (noting many of the species at issue had small populations and many of the species' small populations would likely suffer adverse impact from any taking). Here, Plaintiffs have not even attempted to make any such population-level argument. Dkt. No. 25.

12

>Supp. 2d 1100, 1111 (E.D. Cal. 2013). On a practical level, specificity is required so that the Court may craft its injunction to remedy the harm.

*Alliance for the Wild Rockies v. Kruger*, -- F. Supp. 2d --, No. CV 12-150-M-DLC, 2014 WL 3865936, at *6 (D. Mont., Aug. 6, 2014) (emphasis added, citation omitted). The Court should accordingly reject Plaintiffs' argument concerning the loss of forest habitat.

**C.   The Court Should Reject Plaintiffs Argument Concerning an Alleged Procedural Injury.**

Plaintiffs for the first time argue that irreparable harm will result because FWS did not follow the ESA's procedural requirements. *Compare* Dkt. No. 13 at 31-33 (arguing only that harm to the spotted owl and its habitat were likely to result in irreparable harm to Plaintiffs absent an injunction), *with* Dkt. No. 25 at 16-17 (arguing that FWS's failure to follow ESA's procedural requirements provided independent basis for alleging "irreparable harm"). Plaintiffs, however, waived that argument by failing to raise it in their original motion for a preliminary injunction or during the Court's September 8, 2014, oral argument. Plaintiffs cannot assert this contention for the first time now. *Cf. United States v. Vought*, 69 F.3d 1498, 1501 (9th Cir. 1995) ("although [Defendant] stated in his opening brief that the district court erred by failing to suppress [his] January 15, 1993 statement, he did not provide any argument on the issue", deeming the issue abandoned and declining to consider it).

Even if they had properly raised this argument, it lacks merit. As the Court has already correctly concluded, Plaintiffs have not shown any likelihood of success on the merits of their ESA consultation-related claims under ESA section 7. Dkt. No. 23 at 10 (Court concluding that a "likelihood of success . . . is simply not present in this action, nor are there 'serious questions' going to the merits."). For the reasons stated above, Plaintiffs have not demonstrated otherwise. FWS considered BLM's 103 page biological assessment and issued its thorough 134 page "no

13

jeopardy" BiOp.  FWS concluded in its carefully-crafted analysis that the Project is not likely to jeopardize the spotted owl for numerous reasons.  BiOp at 57-58.  The Court should accordingly reject their argument concerning alleged procedural irregularities.

As such, Plaintiffs have failed to demonstrate that they are likely to suffer irreparable harm absent an injunction.  *Winter*, 555 U.S. at 22.

### III. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST DO NOT FAVOR A PRELIMINARY INJUNCTION.

Plaintiffs have also failed to meet the third or fourth prongs of the Court's analysis.  The "balance of hardships" refers to the relative burdens to parties, *see Winter*, 555 U.S. at 26, while "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties." *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003) (citation omitted).  Although the Ninth Circuit has held that, for ESA claims, "the balance of hardships and the public interest tips heavily in favor of protected species," Plaintiffs must still demonstrate that they meet both of these tests.  *Burlington Northern Railroad*, 23 F.3d at 1511 (citations omitted); *see also Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (setting forth four-factor analysis in ESA context); *Alliance for the Wild Rockies*, 2014 WL 3865936, at *4 (noting in ESA case that "[i]n order to secure an injunction, a plaintiff must satisfy all four *Winter* prongs" and "a plaintiff cannot merely state that the balance of the hardships and the public interest falls in its favor" because, "as with irreparable harm, a plaintiff must present the court with some basis on which it can conclude that an injunction would in fact benefit the protected species"); *Defenders of Wildlife v. Jewell*, NO. CV 14-1656-MWF (RZX), 2014 WL 1364452, at *16 (C.D. Cal. Apr. 2, 2014) (finding in ESA case that balance of hardships does not tip sharply in favor of plaintiff and therefore plaintiff failed to meet its burden under the balance of hardships prong of preliminary injunction analysis).  Plaintiffs' claim to the contrary is

14

contradicted by *Sierra Club v. Marsh*, 816 F.2d 1376 (9th Cir. 1987), which plainly acknowledges the need to "balance . . . hardships and the public interest," even if the balancing act begins with a presumption in favor of protecting ESA-listed species. *Id.* at 1383.

Plaintiffs have not met their burden to show that the balance of the hardships tips sharply in their favor or that an injunction is in the public interest. Dkt. No. 21 at 33; Bollschweiler Decl. (Dkt. No. 21-1) ¶¶ 6-69. The multiple objectives of the Project are in the public interest and would be frustrated if BLM is forced to issue contract suspensions. *Id.* In comparison, Plaintiffs have merely provided generic, conclusory assertions. Plaintiffs state only that "the public has a significant interest in preventing species from going extinct," Dkt. 13 at 34, and "environmental damage, 'by its nature, can seldom be adequately remedied by money damages and is often permanently or at least of long duration, i.e., irreparable." Dkt. 25 at 19. Because Plaintiffs have not rebutted Federal Defendants' detailed allegations concerning the burdens that would result from an injunction, and the public interest in allowing the Project to move forward, the third and fourth prongs tip heavily in favor of Federal Defendants. *See, e.g.*, *Sierra Forest Legacy*, 951 F. Supp. 2d at 1115 (finding that the public interest in forest health favored planned projects to proceed).

## CONCLUSION

Plaintiffs have not satisfied their heavy burden to justify an injunction pending appeal. To start, Plaintiffs have not even attempted to argue that the Court committed any clear legal error in denying Plaintiffs' motion for a preliminary injunction and have failed to show that there are even serious questions going to the merits of their claims. Moreover, Plaintiffs have not demonstrated that they will suffer any irreparable harm. Finally, Plaintiffs have not demonstrated that the balance of hardships tips in their favor or that an injunction is in the public

15

interest. The Project is designed, *inter alia*, to increase visitor and worker safety and to minimize the effect of future wildfire on spotted owl habitat. For these reasons, the Court should deny Plaintiffs' Motion.

Respectfully submitted this 7th day of October 2014.

        SAM HIRSCH
        Acting Assistant Attorney General
        Environment & Natural Resources Division
        SETH M. BARSKY, Chief
        S. JAY GOVINDAN, Assistant Chief
        U.S. Department of Justice
        Wildlife and Marine Resources Section

        */s/ J. Brett Grosko*
        J. BRETT GROSKO
        Wildlife and Marine Resources Section
        Environment & Natural Resources Section
        United States Department of Justice
        P.O. Box 7611
        Washington, D.C. 20044-7611
        TEL: (202) 305-0342
        FAX: (202) 305-0275
        E-mail: brett.grosko@usdoj.gov

*Of Counsel*

Diane Hoobler, Esq.
U.S. Department of the Interior
Office of the Solicitor

16

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2014, I caused the foregoing Response to Plaintiffs' Motion for Preliminary Injunction upon counsel of record, as indicated below, through the Court's electronic service system (ECF/CM):


   *s/ J. Brett Grosko*
Attorney for Federal Defendants